UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AHMID ABDULLAH SHAREF-MOHAMED,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3264-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this verified 28 U.S.C. § 2241 habeas action, challenging his December 27, 2025, redetention as unconstitutional. Dkt. 1. He seeks release from custody and, in the alternative, injunctive relief in the form of a constitutionally adequate bond hearing. *Id.* at 19-20. Respondents filed a return, Dkt. 9, together with declarations from their counsel Barbara Andrade, Dkt. 10 ("Andrade Decl."), and Deportation Officer Nhat Truong, Dkt. 11 ("Truong Decl."), both of whom attest to the authenticity of documents attached as exhibits. Petitioner filed a traverse in reply. Dkt. 12.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth below.

## I. BACKGROUND

Petitioner Ahmid Abdullah Sharef-Mohamed is a native and citizen of Sudan who entered the United States without inspection on or about June 1, 2024. Truong Decl., ¶ 3. He was apprehended on that date, some distance from Lukeville, Arizona. *Id.*; Dkt. 10-3 (Form I-213); Dkt. 10-8 at 2 (Form I-213). On June 3, 2024, Petitioner was served with a Notice to Appear charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). Dkt. 10-1 at 2-3 (Form I-862, Notice to Appear). Petitioner was released into the United States on an Order of Recognizance ("OREC").[1] Truong Decl., ¶ 4. According to the I-213 Form and Officer Truong, Petitioner was originally scheduled for an immigration merits hearing in San Francisco, California on April 13, 2027. Truong Decl., ¶ 5; Dkt. 10-3 at 4 (Form I-213).

On December 27, 2025, Petitioner was apprehended near Caribou, Minnesota. Dkt. 10-3 at 4 (Form I-213). The law enforcement officials who detained him reported to Border Patrol Agents that Petitioner and his companion became lost while traveling toward Canada. *Id.* After confirming Petitioner's immigration status, a Border Patrol agent issued a warrant for his arrest "as authorized by section 236 of the Immigration and Nationality Act." Dkt. 10-4 at 2 (Warrant). He was processed and turned over to ICE custody. Dkt. 10-3 at 5 (Form I-213). He was transferred to the Grant Forks County Correctional Center in North Dakota, and then to the Dakota County Jail in Dakota City, Nebraska. Truong Decl., ¶¶ 6-7.

[1] The only OREC that appears in the record is dated June 3, 2024, but it is unsigned by either Petitioner or any government officer or official. Dkt. 10-2 at 2. It references an attached "OREC G-56" that does not appear in the record.

Petitioner sought habeas relief in the U.S. District Court for the District of Nebraska, which was subsequently denied on March 17, 2026. *Sharef-Mohamed v. Respondent Warden of Dakota Cnty. Jail*, 4:26CV3086, 2026 WL 752442 (D. Neb. Mar. 17, 2026) ("*Sharef-Mohamed I*"). In *Sharef-Mohamed I*, the court considered and rejected Petitioner's "claim that he is detained without bond under the wrong statute, 8 U.S.C. § 1225(b)(2), instead of 8 U.S.C. § 1226[.]" *Id.* at *2. Without discussing any of the factual circumstances leading to Petitioner's detention, the *Sharef-Mohamed I* court determined, under precedent authoritative in that District (but not in this one),[2] that "[Petitioner] is properly detained under § 1225(b)(2) even if he is also subject to § 1226(a)[.]" *Id.* (citing and adopting *Alberto Rodriguez v. Jeffreys*, 8:25CV714, 2025 WL 3754411, at *12 (D. Neb. Dec. 29, 2025)). The court further determined that Petitioner was not entitled to a bond hearing because the language of § 1225(b) would not allow for it. *Id.* (noting that the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) explained that the mandatory detention provisions of 8 U.S.C. § 1225(b) do not say "anything whatsoever about bond hearings.").

On May 27, 2026, an IJ with the Omaha Immigration Court issued an oral decision finding Petitioner inadmissible under INA § 212(a)(6)(A)(i) and ordered him removed to Sudan. Dkt. 10-5 (Removal Order).[3] Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), Dkt. 1 at 5, which remains pending as of the date of Petitioner's reply. Dkt.

[2] *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). The *Sharef-Mohamed I* court found persuasive a decision from the U.S. Court of Appeals for the Fifth Circuit, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026). Shortly after Petitioner was transferred to this District, in *Rodriguez Vazquez v. Bostock*, the Ninth Circuit examined a circuit split on the issue and rejected the relevant reasoning of *Buenrostro-Mendez*, holding instead "that § 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States." *Rodriguez Vazquez*, 183 F.4th at 1172.

[3] The copy of the IJ Order appearing in this record is partly redacted, making the exact nature of the proceedings unclear. Dkt. 10-5 at 2-3 (Removal Order).

12. On July 19, 2026, Petitioner was transferred to the NWIPC, where he remains detained today. Truong Decl., ¶¶ 10, 14.

On August 19, 2026, in connection with Petitioner's BIA appeal, the Department of Homeland Security ("DHS") formally notified the BIA that "that the respondent appears to have a serious mental disorder or condition that may impact his or her ability to participate in [his appeal] and, if applicable, to represent [himself]," potentially qualifying him as a member of the class certified in *Franco-Gonzalez v. Holder*, No. 10-2211, 2011 WL 11705815, at *16 (C.D. Cal. 2011).[4] Dkt. 10-6 at 3. Respondents do not further explain why DHS provided the BIA with this notification in their return memorandum.

Petitioner requested a bond hearing or custody redetermination on or about August 20, 2026. Dkt. 1 at 4. On September 14, 2026, three days after this habeas petition was filed, an IJ with the Tacoma Immigration Court conducted that bond hearing at which Petitioner appeared *pro se*. Truong Decl., ¶ 13. The IJ denied bond, finding that the immigration court lacked jurisdiction. *See* Dkt. 10-7. The IJ's written order contains no reasoning or alternative finding, acknowledges that Petitioner requested a change in custody pursuant to 8 C.F.R. Part 236, and indicates that the IJ "considered the representations" of ICE and Petitioner. *Id.* at 2. The box ordering "No Jurisdiction" is checked and reads, "Mandatory Detention under *Matter of Q. Li*."[5]

---

[4] *Franco-Gonzalez* "class members 'who have a serious mental disorder or defect that renders them incompetent to represent themselves' are entitled to a 'Qualified Representative' in immigration proceedings, and class members 'who have been detained for more than six months' are entitled to a bond hearing within 180 days after being identified." *Lara v. Hernandez*, C26-0747 TSZ, 2026 WL 1758643, at *2 (W.D. Wash. June 18, 2026) (citing *Franco-Gonzalez*, 2011 WL 11705815, at *16, and *Franco-Gonzalez v. Holder*, No. 10-2211, 2013 WL 8115423, at *1–2 (C.D. Cal. Apr. 23, 2013)). "A *Franco–Gonzales* detention hearing is not a statutory hearing under 8 U.S.C. § 1226(a), but rather a procedural requirement imposed by the *Franco-Gonzales v. Holder* class action injunction to protect certain detained immigrants who are mentally incompetent to represent themselves in immigration proceedings." *Perez Perez v. Scott*, C26-1693-SAB, 2026 WL 1703747, at *1 (W.D. Wash. June 12, 2026).

[5] The reference to *Q. Li* is an indication that the IJ found Petitioner was detained pursuant to 8 U.S.C. § 1225. In the *Matter of Q. Li*, 29 I. & N. Dec. 66, 67 (BIA 2025), the BIA considered the custody status of an individual who was originally taken into custody shortly after crossing the southern border of the United States and accordingly briefly

*Id*. Defendant waived his right to appeal the IJ's decision. Truong Decl., ¶ 13. Likely because the hearing took place after this habeas petition was filed on September 11, 2026, neither the petition nor the traverse challenges the sufficiency of the bond hearing. *See generally* Dkts. 1, 12.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225, and that Respondent's failure to provide a constitutionally adequate bond hearing before his redetention violates the INA. Dkt. 1 at 9. He also argues that revocation of his OREC and his redetention without a bond hearing or opportunity to be heard violates due process because "his redetention without the neutral custody review he requested bears no reasonable relation to preventing danger or flight." *Id.* at 14. Thus, he argues that he is entitled to relief under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Id.* at 14-16. In the

---

detained and then released "on parole pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A) (2018)." *Id.* at 67. When Li was later taken into custody, a question arose as to whether she was detained pursuant to 8 U.S.C. § 1225 or § 1226 (referenced therein as INA §§ 235-236). *Id*. at 69. The BIA held in *Q. Li* that "that when parole is terminated, a noncitizen is returned to custody under § 1225(b) pending removal proceedings." *Popova v. Blanche*, C26-1229-MLP, 2026 WL 1242984, at *3 (W.D. Wash. May 6, 2026). On the record before this court, this matter differs from the *Q. Li* in that Petitioner was not designated as an "arriving alien" when he was arrested near Lukeville, Arizona in 2024 or paroled into the United States. *See* Dkt. 10-2 (6/3/24 OREC) (effecting release under INA § 236); (12/27/25 Warrant) (referencing INA § 236 as basis for taking Petitioner into custody).

alternative, he argues that even if he is subject to mandatory detention under § 1225(b), his detention has become unreasonably prolonged. *Id.* at 16 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019)).

Respondents argue that Petitioner had a full and fair opportunity to raise the instant claims in *Sharef-Mohamed I*. Dkt. 9 at 2. Accordingly, Respondents argue, the instant petition is barred under the abuse of writ doctrine. *Id.* at 5 (citing *Mendoza Araiza v. Hernandez*, 2:26-CV-01892-LK, 2026 WL 2071149, at *3 (W.D. Wash. July 17, 2026)). Respondents also emphasize that Petitioner has not amended his petition to challenge the adequacy of the process he was afforded at the bond hearing on September 14, 2026, or raise any argument about the legal consequences of being identified as a potential member of the *Franco-Gonzales* class.[6] *Id.* To the extent the petition could be construed as raising a due process claim relating to Petitioner's potential inclusion in the *Franco-Gonzales* class, Respondents suggest that the appropriate remedy is a new hearing, not release. *Id.* at 2, 5.

### A. Abuse of Writ

The Court first decides whether the abuse of writ doctrine bars Petitioner's "successive" habeas petition. Respondents argue that Petitioner challenges his detention on the same bases that he challenged his detention in *Sharef-Mohamed I*, *i.e.*, that § 1226(a) governs his detention and that under both the INA and the Fifth Amendment, he was entitled to an individualized bond hearing assessing his risk of flight before revocation of his OREC. Dkt. 9 at 5.

Since the *Sharef-Mohamed I* decision, Petitioner has been transferred to this jurisdiction and the Ninth Circuit has issued a decision clarifying that the INA subjects noncitizens "entering

[6] The Court makes no findings as to Petitioner's potential *Franco-Gonzales* class membership, as that issue is not properly before the Court.

the United States at the border to § 1225(b)(2)(A), and unadmitted [noncitizens such as Petitioner] present in the interior of the country to § 1226." *Rodriguez Vazquez*, 183 F.4th at 1193 (alteration added). At the time *Sharef-Mohamed I* was decided, neither the Ninth Circuit nor the Eighth Circuit—where Petitioner was previously held in Nebraska—had spoken definitively on this issue.[7] Petitioner argues that this change in the law can justify rehearing even a previously-decided legal question, and that the abuse of writ doctrine should not apply for that reason.[8] Dkt. 12 at 3.

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey v. Zant*, 499 U.S. 467, 470 (1991) (partially overturned on other grounds). "The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (internal quotation marks omitted). The Ninth Circuit has recognized that the abuse of the writ doctrine may apply to successive habeas petitions filed under Section 2241. *Id.* Respondents bear the initial burden to plead abuse of the writ with "clarity and particularity." *McCleskey*, 499 U.S. at 494. If this is accomplished, the burden shifts to Petitioner. *Id.* "Under this doctrine, 'a successive petition that raises *identical* grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for

---

[7] The detention center where Petitioner was formerly held in Nebraska is within the geographic bounds of the Eighth Circuit. At the time of *Sharef-Mohamed I*, the Eighth Circuit had not yet issued governing authority on this issue. A few days after *Sharef-Mohamed I* was decided, the Eighth Circuit adopted an interpretation consistent with the outcome of *Sharef-Mohamed I*. *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026).

[8] Petitioner's briefing lacks clarity and coherence, and it fails to fully address the questions before the Court, providing a bare bones and inadequately supported answer to Respondents' legitimate argument that this Petition constitutes an abuse of the writ. While it is not this Court's job to fill the gaps in Petitioner's briefing, to avoid irreparably punishing Petitioner for counsel's lack of diligence, the Court has done so. The Court cautions counsel that similar inadequate briefing in the future may not be considered.

bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim.'" *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023) (emphasis in original) (quoting *Alaimalo*, 645 F.3d at 1049)). To determine whether a claim is second or successive, courts "look to the substance of the claim" to decide if a "petitioner had a full and fair opportunity to raise the claim in the prior application." *Eldridge*, 70 F.4th at 552.

Petitioner was transferred to this jurisdiction is now detained here. In referencing the subsequent clarification of the law in this Circuit, he has shown good cause for bringing a second petition "and that prejudice would result from barring this claim." *See U.Z. v. Chestnut*, 1:26-CV-07626-TLN-CSK, 2026 WL 3181257, at *2–3 (E.D. Cal. Oct. 23, 2026) (holding second habeas petition not barred by abuse of writ doctrine, where the Ninth Circuit had not yet issued controlling authority as to Respondent's § 1225(b) arguments when first petition was decided). As Petitioner points out, he was transferred to this jurisdiction through no effort of his own. Dkt. 12 at 2-3. Considering the intervening clarification of the law in both jurisdictions where Petitioner has been held, it would work of miscarriage of justice to deny him the opportunity to challenge the statutory basis for his detention under *Rodriguez-Vazquez*, which clarifies the authority under which he is detained in this jurisdiction. *See Rabadanov v. Figueroa,* CIV-26-1441-J, 2026 WL 2690980, at *1-2 (W.D. Okla. Sept. 14, 2026) (holding second, post-transfer habeas petition was not barred following Tenth Circuit's clarification of law in post-transfer district). This reasoning is consistent with the principle that a material change in the law affecting a petitioner's habeas corpus claims may justify a successive petition, to the extent the

change in the law affects the availability of the legal basis for those claims. *See Alaimalo v. United States*, 645 F.3d 1042, 1048 (9th Cir. 2011).

Finally, the Respondents also argue that Petitioner's due process claims should be dismissed under the abuse of writ doctrine. Because the *Sharef-Mohamed I* court did not reach the merits of Petitioner's due process claims, it would work a miscarriage of justice to find those claims barred now those claims now. *See McCleskey*, 499 U.S. at 495; *Alaimalo*, 645 F.3d at 1050 ("The Supreme Court has made clear that federal courts must be mindful of the "ends of justice" before dismissing a successive habeas petition."). Accordingly, Respondents' request that the Petition be dismissed under the abuse of writ doctrine is DENIED.

**B. 8 U.S.C. § 1226(a) governs Petitioner's detention.**

Turning to the substance of the claim, the Court must first determine which statutory provision governs Petitioner's detention. "Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). "Under 8 U.S.C. § 1226(a), noncitizens are entitled to a bond hearing before an immigration judge to determine whether they pose a flight risk or danger to the community. Under 8 U.S.C. § 1225(b)(2), by contrast, noncitizens are subject to mandatory detention without eligibility for bond." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1196–97 (W.D. Wash. 2025).

Respondents assert that Petitioner is detained under the mandatory detention provisions of 8 U.S.C. § 1225(b) without providing any factual basis supporting that assertion. *See* Dkt. 9 at 1. Rather, Respondents appear to treat the question as settled by prior judicial rulings.

Courts in this jurisdiction consistently hold that an individual released on an OREC is subject to discretionary detention under 8 U.S.C. § 1226(a). *See, e.g.*, *Singh v. Noem*, 2:26-CV-00503-LK, 2026 WL 657036, at *3 (W.D. Wash. Mar. 9, 2026); *Lucena-Ojeda v. Noem*, 2:26-CV-00085-BAT, 2026 WL 279353, at *1 (W.D. Wash. Feb. 3, 2026) (collecting cases). There is no dispute here that Petitioner was released on an OREC in 2024, and his release must have been preceded by a determination that he does not pose a flight risk or a danger to the community. *See Ledesma Gonzalez*, 808 F. Supp. 3d at 1198.

If there is some factual basis to consider Petitioner to have been detained under 8 U.S.C. § 1225 in either 2024 or 2025, neither the Respondents, nor the *Sharef-Mohamed I* court, nor the IJ's Order provides it. To the contrary, the documents in the record are consistent in suggesting that Petitioner was detained on both occasions under the authority of INA § 236 (which is codified at 8 U.S.C. § 1226). *See* Dkt. 10-2 (6/3/24 OREC) (effecting release under INA § 236); (12/27/25 Warrant) (referencing INA § 236 as basis for taking Petitioner into custody). "[W]here a petitioner has been treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply." *Del Valle Castillo v. Wamsley*, 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (internal quotation marks omitted). Accordingly, on the record before this court, the Court finds, consistent with consistent with cited authority from this District above, that Petitioner is detained pursuant to 8 U.S.C § 1226(a). *See Rodriguez Vazquez*, 183 F.4th at 1172.

### C. *Mathews* and Due Process

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332 (omissions added). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Respondents do not attempt to argue that the *Mathews* factors weigh in their favor here; Respondents merely argue that Petitioner is abusing the writ of habeas through his instant habeas petition. See Dkt. 9 at 1-2 ("Petitioner challenges his mandatory detention under 8 U.S.C. § 1225(b), arguing instead that his detention is governed by the discretionary framework of 8 U.S.C. § 1226(a). . . . these claims have been fully adjudicated, this petition is barred as an abuse of the writ.").

*1. Petitioner had a liberty interest in remaining free.*

Applying the *Mathews* factors to the facts of this case, it is clear that Petitioner had a liberty interest in remaining free. When Petitioner was released on an OREC in 2024, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F.

Supp. 3d 1083, 1093 (E.D. Cal. 2025). He lived in the United States for 18 months and pursued an asylum application based on his credible fear of torture if returned to Sudan. His life in the United States was only made possible because of his freedom, the revocation of which was entitled to due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Petitioner's liberty interest in remaining free was unquestionably deprived by his arrest and redetention challenged here. Accordingly, the first factor weighs in Petitioner's favor.

*2. There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live the United States, was re-detained without notice or an opportunity to be heard. Although there is documentation as to why Petitioner was detained—officers suspected he was trying to enter Canada—there is no official documentation as to the reasons for revocation of Petitioner's OREC. This suggests only cursory consideration of factors warranting redetention. There were also no findings documenting individualized consideration of Petitioner's circumstances by either the *Sharef-Mohamed I* court or the IJ in determining that Petitioner is subject to mandatory detention. These facts point to the need for further safeguards against erroneous deprivation.

The *Mathews* analysis looks to the risk of an erroneous deprivation of the relevant interest through the governmental procedures used, and the probable value, if any, of additional or substitute safeguards. *Mathews*, 424 U.S. at 335. The circumstances of Petitioner's redetention show that additional, pre-deprivation process would have been valuable in ensuring

such error did not occur. Providing notice and a pre-deprivation hearing would have provided an opportunity for Petitioner to challenge the factual bases for his redetention. This factor weighs in favor of Petitioner.

*3. The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. Again, Respondents do not here address the *Mathews* factors.

The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, Respondents do not articulate an interest advanced by Petitioner's redetention that would have been undermined by first providing pre-deprivation process. Respondents do not identify any evidence supporting a contention that Petitioner posed a flight risk or a danger to the community that would have arguably justified his redetention without notice. Nor do Respondents argue the law compelled it. *See, e.g.*, 8 U.S.C. § 1226(c)(1). Even where the government believes it has a lawful basis to redetain a noncitizen, it must still "effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release

from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his redetention, if any. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining alternative requests for injunctive relief are DENIED as moot. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 29th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge